# RE DESTRUCTION OF LIQUOR.

### METHOD OF DISPOSING OF SEIZED LIQUOR.

Destruction of Liquor—Publicity.

    1. The Volstead Act does not require the public destruction of liquor, and the court will not interfere with any efficacious means used by the marshal.

Disposition—Hospitals.

    2. Upon application of Federal hospitals the necessary amount of seized liquor will be turned over to them. Quære, as to private hospitals.

Destruction—Other Courts.

    3. In destroying liquor this court will act in conformity with the practice of other courts on the subject.

Destruction—Unfit Liquor.

    4. Meantime only liquor unfit for use, and that not needed for the Federal hospitals, will be destroyed.

Prohibition—Private Views of Judge.

    5. The prohibition laws were enacted for a high public purpose, but the methods of court procedure and execution of orders are not changed.

Opinion filed June 14, 1920.

---

NOTE.—Authorities discussing the question of construction and effect of the Volstead Act are collated in a note in 10 A.L.R. 1553.

Re Destruction of Liquor.

*Mr. Miles M. Martin,* United States District Attorney, for the Government.

HAMILTON, Judge, delivered the following opinion:

There has accumulated in the office of the collector of customs from seizures from foreign vessels, and in the office of the marshal, from seizures in connection with prohibition cases, a large amount of alcoholic liquor. Much of what has been seized in connection with prohibition prosecutions consists of low-grade rum and the like, which, according to testimony, is not fit for human use in any form. What has come into the hands of the collector of customs, being principally what has been taken off foreign vessels, is made up of brandy, whisky, and wines, to which prior to the passage of the prohibition act no exception could be taken. Much of it from the liquor standpoint is of well-known brands and high grade. The motion seeks the destruction of such of these goods as cannot be utilized for Federal hospitals, those in Porto Rico being the two Army hospitals at San Juan and Cayey.

1. As to the inferior liquor seized in connection with the prohibition prosecutions there can be no doubt. It should be destroyed.

A question is made by the prohibition director, who was present in court, as to the method of disposition. The court has not heretofore directed what method of destruction shall be used. That actually pursued by the marshal, according to his official report, is that of opening and emptying the bottles into the sewer, and its discharge in this manner into the waters of the Bay of San Juan, which of course means its dispersion

Re Destruction of Liquor.

and absolute disappearance. The prohibition director desires a more public method of disposition, on the seashore or per- haps the public plaza, apparently with the view of impressing the public.

The question is whether there should be any change in the method of destruction. The law in § 25 and elsewhere declares that no property rights exist in liquor so seized, and that liquor unlawfully held, and all property designed for its manufac- ture, "shall be destroyed unless the court shall otherwise order." Whether there is any moral question involved, and whether the destruction should be in such a way as to impress the public, is not mentioned in the law. The court of course cannot be ignorant that the law was intended to suppress what is held by Congress to be a great moral evil; and the law is "that all the provisions of this act shall be liberally construed to the end that the use of intoxicating liquor as a beverage may be pre- vented." Sec. 3. The use of a room or vehicle for manufac- ture or sale of liquor makes it, under § 21, a "public nuisance," for which a man may be indicted, and which may be enjoined at the suit of the United States; the court also having power, in ordering the abatement of the nuisance, to forbid the use of the room or vehicle for one year, unless bond is given for its proper use. Sec. 22. Other details are provided which are deemed necessary to the enforcement of the act, but not any as to the method of destruction.

It would seem, therefore, that the court should pursue the course ordinarily taken in regard to the execution of court orders. The modern tendency is away from the public execu- tion of criminals, and it may be doubted whether anything in the nature of an auto de fe, especially in a Latin-American

Re Destruction of Liquor.

community, imperfectly trained to American customs, would serve any good purpose. This is not determined, but at least it is .doubtful, and the court sees no necessity for committing itself to any particular form of destruction. That heretofore used by the marshal is efficacious, and the court sees no reason for giving special orders in the matter. It will leave the method of destruction in the future, as in the past, to the discretion of the marshal.

2. On the other hand there seems to be no question that what is needed for the two base hospitals should be delivered to them without cost. Under § 27 it is provided that the intoxicating liquor subject to destruction may be delivered, by order of court, "to any department or agency of the United States government for medicinal, mechanical, or scientific uses." The application of these two hospitals are on file, and, in accordance therewith, the marshal or other custodian will deliver to each hospital 25 quarts of whisky and 25 quarts of brandy, making 50 quarts of whisky and 50 quarts of brandy to be so disposed of. There is no application on file in regard to mechanical or scientific use, nor any formal application from any other source. If, however, these liquors are of a character which may be usable for medicinal purposes, the question arises whether it is possible, under the law, to deliver any of it under proper safeguards to any private hospital or similar institution. Perhaps this may be left open until there is such an application either for donation or for sale at some low price.

3. It is contended by the prohibition director that the court should not be placed in the attitude of keeping a stock of liquor on hand to be disposed of to future applicants, and should order destroyed whatever is not turned over under the law. The law,

XI. Porto Rico.—36.

Re Destruction of Liquor.

however, does not contain so strict a rule. It permits the sale of such goods to drug stores, and the court is not officially advised that drug stores in Porto Rico are properly supplied already, sufficiently for the public good. It is unquestionably true that the court will not be a party to any improper disposition of liquor, but, this being the first occasion for a clearance, so to speak, it is not disposed to go ahead except upon full information as to the situation. It is important for the uniform execution of the prohibition law that the Federal courts act in harmony, and the court is making inquiries as to the course other district courts are taking in such matters.

4. The law in different sections distinctly contemplates that alcoholic liquor may be used for sacramental, medicinal, mechanical, or scientific purposes. Precisely how far these terms go, and what varieties of alcoholic liquor can be utilized in these different directions, the court does not know judicially. It does not appear wise to destroy what cannot be replaced, what the law contemplates should not be replaced, without being certain as to these provisions, which are as much a part of the law as any other. No ruling, therefore, is made as to what liquor is proper for use in these different directions, and the district attorney is instructed to bring further evidence before the court in this regard. Meantime only the liquor entirely unfit for use, and that which is needed for the Federal hospitals, is to be considered as covered by this order. The list filed with the motion is a long one and covers a great many varieties. Any order made should cover all that is before the court. All other matters will be retained for further information.

5. As this is a matter of first impression, it may not be improper to add what my conception is of the relation of the court

Re Destruction of Liquor.

to this law. There is no question that it was enacted from high moral as well as economic reasons, and the general impression is that it is producing very beneficial results. It is said that savings accounts are being increased and that the jails are being emptied. It may very well be that a judge acting in his private capacity as a citizen and elector would favor this and similar public movements. Such preference, however, cannot be taken into account by a judge sitting as a court. He is there acting not as a person desiring certain laws to be made, but as passing upon laws which have been made. In this case he is required to give a construction of the law which will prevent the use of alcoholic liquors as a beverage, and this will be steadily borne in mind. The methods of court procedure and execution, however, are not changed, and therefore it is not to be supposed that they were intended to be changed. Such provisions of the law, what may be called the mechanical execution of the law, stand in the same position as any other law, and action will be had accordingly. There are special problems in Porto Rico, but the general methods of executing a law of the United States should be the same throughout the whole United States.

For the present the order will be limited to turning over to the Army hospitals of what has been applied for, and for the destruction of what is not fit for human use. All other matters are reserved for early determination.

It is so ordered.